UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JANET R.,[1]
                                        Plaintiff          DECISION AND ORDER

-vs-                                                       1:19-CV-1100 CJS

COMMISSIONER OF SOCIAL
SECURITY,
                                        Defendant.

_____


INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI")

benefits.   Now before the Court is Plaintiff's motion (ECF No. 7) for judgment on the

pleadings and Defendant's cross-motion (ECF No. 12) for the same relief.   For the

reasons discussed below, Plaintiff's application is granted, Defendant's application is

denied, and this matter is remanded for further administrative proceedings.

STANDARDS OF LAW

The Commissioner decides applications for SSDI benefits using a five-step

sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20
> C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether
> the claimant is currently engaged in substantial gainful activity. If he is not,
> the Commissioner next considers whether the claimant has a severe

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.[2] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

it is supported by substantial evidence and the correct legal standards were applied.")

(citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the

Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error

of law has been made that might have affected the disposition of the case, this court

cannot fulfill its statutory and constitutional duty to review the decision of the administrative

agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct

legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines

the record to determine if the Commissioner's conclusions are supported by substantial

evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more

than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—
> even more so than the 'clearly erroneous' standard, and the Commissioner's
> findings of fact must be upheld unless a reasonable factfinder would have to
> conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443,
> 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not
> required to discuss every piece of evidence submitted, and the failure to cite
> specific evidence does not indicate that such evidence was not considered."
> *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019)
(internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary for purposes of this Decision and Order.

As of the date of the administrative hearing in this matter Plaintiff was 60 years of age and had worked as a registered nurse and nurse supervisor for 42 years before the alleged onset of disability. Tr. 57.   During that same period Plaintiff had worked second jobs in nursing homes.   Much of Plaintiff's work as a nurse involved very heavy lifting of patients. Tr. 60.   Plaintiff indicates that she continued to work as long as she possibly could with her physical problems, until it became apparent to her that she was unable to do so. Tr. 57.   Plaintiff had paroxysmal atrial fibrillation that has caused her to have palpitations, and to collapse and fall. During one such falling/syncope episode at work, Plaintiff injured her right shoulder. Plaintiff had also previously injured her left shoulder and had undergone surgery which did not completely restore use of the shoulder.   Plaintiff had diabetes mellitus and hypothryroidism, was morbidly obese, weighing approximately 300

pounds, and had undergone unsuccessful gastric bypass surgery.      Plaintiff also had

knee pain from degenerative changes, for which she had received various injections, as

well as back pain from spondylosis and moderate to severe stenosis at several levels of

her lumbar spine.   Plaintiff indicated that she was in pain 90% of the time from her

shoulders, knees and back.   Plaintiff took approximately 20 different medications for her

various ailments.   Plaintiff claimed to have some mental health problems, but had never

received treatment. Tr. 58.   Plaintiff indicated that the biggest obstacle to continued

employment for her was her cardiac condition, since her arrythmia could cause her to

collapse without warning. Tr. 67.

On September 18, 2018, a hearing was held before an ALJ.   At the start of the

hearing, Plaintiff's non-attorney representative brought up the issue of a missing piece of

evidence, about which he had notified the Commissioner more than five days prior to the

hearing.   The following discussion ensued:

> ALJ:   75 days' notice was given in this case; therefore, pursuant to the
> regulations, within the five business days prior to a hearing, an ALJ can
> decline to obtain or consider late evidence.   The Agency has been put on
> timely notice of outstanding evidence from Ryan Connell, Dr. Ryan Connell,
> from Sands-Constellation Heart Institute.   That's a medical source opinion.
> Unless it's dated five business days prior to the hearing, I will not be
> accepting that document.   Do you expect anything to be coming in?
>
> ATTY: We, we have followed up. We are trying to still obtain that document,
> Your Honor.
>
> ALJ: Well, as I say, unless it's dated five business days, or more, prior to the
> hearing, I will not be accepting it unless one of the following exceptions
> applies.   Did the Agency mislead the claimant?
>
> ATTY: No, Your Honor, but we notified the Agency in advance if you're still

5

reading on that.

ALJ: Well, you've notified the Agency of a document that doesn't exist.   You haven't notified the Agency of outstanding medical reports.   You've notified the Agency of a medical source opinion.

ATTY: Correct, Your Honor.

ALJ: So, unless that medical source opinion was created more than five business days prior to the hearing, it will not be accepted.   The next exception – does the claimant have a physical, mental or language limitation, that would have prevented compliance with providing notice according to the regulations?

***

ATTY: No, Your Honor, she doesn't.   But, again, we did notify the Agency, but I understand what you're saying.

ALJ: Were there circumstances beyond the claimant's control such that, despite actively and diligently seeking that evidence, it was not received prior to the deadline?

ATTY:   Yes, Your Honor.   The source wouldn't cooperate in supplying it in time, even though we requested it several months ago.[3]

ALJ: Well, I don't find that any exceptions do apply.   Therefore, as I say, you can submit it, but if it was not created five or more business days prior to the date of the hearing, it will not be exhibited.

Tr. 34-35.

As it turned out, Sarah Taylor, M.D. ("Taylor") of the Sands Constellation Heart

Institute completed the missing medical opinion the same day as the hearing, and Plaintiff

submitted it to the Commissioner that same day. Tr. 25.   The Court pauses here to note

---

[3]  Plaintiff indicates that this assertion in proven by the record. *See*, Pl. Memo of Law at p. 16 ("Indeed, as indicated in the facsimile notification on the top of the submitted opinion, Plaintiff sent the questionnaire to Sands-Constellation Heart Institute on June 5, 2018, which was over 3 months prior to the hearing held on September 18, 2018. T 26.").

6

that there is some confusion as to who authored the opinion.   The ALJ found that it was

Taylor, but Plaintiff has maintained both that it was Connell, Pl. Memo of Law at p. 11, and

that it was Taylor, *id*. at p. 27.   The signature on the form is illegible, but the form is

electronically stamped with Taylor's name.   Accordingly, for purposes of this decision and

order, the Court will refer to the opinion as Taylor's, though it could also be from Connell.

In any event, Taylor did not indicate a particular diagnosis, but, when asked to list

Plaintiff's clinical findings, wrote "recurrent syncope, paroxysmal atrial fib., SVT

[(supraventricular tachycardia)][4] & AE [(adverse event)] found on loop recorder, abnormal

stress test." Tr. 29.   Taylor reported that Plaintiff's symptoms included intermittent

substernal chest pain, shortness of breath, palpitations, fatigue and dizziness, and that she

experienced such symptoms frequently. Tr. 29.   Taylor further indicated that Plaintiff

would likely miss more than four days of work per month. Tr. 30.[5]

On October 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled

at any time between the alleged disability onset date and the date of the decision.

Preliminarily, the ALJ excluded the medical opinion from Dr. Taylor, stating in pertinent

part:

> The claimant submitted or informed the [ALJ] about additional written
> evidence less than five business days before the scheduled hearing date.
> The undersigned [ALJ] declines to admit this evidence because the
> requirements of 20 CFR 404.935(b) are not met.   The opinion of Dr. Taylor
> was created on September 18, 2018, the date of the hearing, and did not
> exist at the time the agency received the 5-business-day notice on
> September 07, 2018.   Moreover, the 5-business-day notice to the agency
> was for a medical source opinion from Dr. Connell, not Dr. Taylor.   Finally,

---

[4]  Abnormally fast heartbeat.
[5]  A vocational expert testified at the hearing that employers would not tolerate an employee missing more than one day per months. Tr. 65.

> none of the exceptions in the regulation is satisfied; therefore, the medical
> source opinion from Dr. Taylor, MD is not submitted into the record.

Tr. 13.   The ALJ then applied the five-step sequential evaluation discussed earlier and found, in pertinent part, that Plaintiff had a severe impairment consisting of "heart condition," and non-severe impairments consisting of pain in the shoulder and knee. Tr. 16.   The ALJ noted that Plaintiff also claimed to have a mental impairment, depression, but found that there was insufficient evidence to establish such an impairment. Tr. 16. The ALJ further found that Plaintiff had the RFC to perform light work, except that she could only "frequently climb ramps, stairs, ladders, ropes, scaffolds, stoop, kneel crouch or crawl." Tr. 17.   The ALJ continued and found that Plaintiff could perform her past work as a nurse supervisor, as well as other work.   The ALJ consequently found that Plaintiff was not disabled.

Plaintiff sought review from the Appeals Council, arguing that the ALJ had erred in failing to consider the excluded evidence.   However, on June 21, 2019, the Appeals Council declined to review the ALJ's decision, finding that Plaintiff had not shown a reasonable probability that Dr. Taylor's medical opinion would have changed the outcome of the hearing. Tr. 1-2.

In this action, Plaintiff primarily maintains that the following errors require reversal of the Commissioner's decision: 1) the ALJ inappropriately rejected Taylor's medical opinion under the "5-day rule"; and 2) the ALJ did not support her RFC finding with substantial evidence. Plaintiff also maintains that the Appeals Council failed to weigh or evaluate the excluded evidence under the proper standards.

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions.

DISCUSSION

The ALJ's Decision to Exclude Opinion Evidence

Plaintiff's primary contention in this action is that the ALJ erred in excluding the medical opinion from treating physician Dr. Taylor that was not received by Plaintiff until the day of the hearing, even though Plaintiff's representative had requested the opinion several months earlier, and had followed up on that request in the interim.   The Court agrees.

In that regard, the relevant regulation is 20 CFR § 416.935, which states in pertinent part:

> (a) When you submit your request for hearing, you should also submit information or evidence as required by § 416.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 416.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply.
>
> (b) If you have evidence required under § 416.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> ***
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or

9

submitting the evidence earlier. Examples include, but are not limited
to: … (iv) You actively and diligently sought evidence from a source and
the evidence was not received or was received less than 5 business
days prior to the hearing.

20 C.F.R. § 404.935 (Westlaw 2021).

A decision by an ALJ to exclude evidence under this provision is reviewed for abuse
of discretion. *cf., McClesky v. Astrue*, 606 F.3d 351, 355 (7th Cir. 2010) (indicating that
ALJ's decision to exclude evidence is reviewed for abuse of discretion); *see also,*
*McCaskill v. Dep't of Health & Hum. Servs.*, 640 F. App'x 331, 336 (5th Cir. 2016
("Evidentiary rulings are reviewed under a deferential abuse of discretion standard.").   In
this context, an abuse of discretion occurs where a decision to admit or exclude evidence
is manifestly erroneous. *See, e.g., United States v. Samet*, 466 F.3d 251, 254 (2d Cir.
2006) ("[W]e will reverse only where a ruling to admit or exclude evidence is 'manifestly
erroneous' and as such constitutes an 'abuse of discretion.'").

Here, the Court finds that the ALJ's decision to exclude Dr. Taylor's opinion was an
abuse of discretion.   As discussed above, the ALJ offered two reasons for refusing to
accept Plaintiff's late evidence: First, because Taylor's report was created after Plaintiff
gave her 5-day notice; and, second, because the late evidence was from Taylor, while the
5-day notice had indicated that the report would be from Dr. Connell.   However, neither of
those reasons were justified.

To begin with, the fact that the late evidence was created after the 5-day notice is
irrelevant.   Indeed, even assuming Plaintiff had *not* given notice at all, the ALJ was
nevertheless required to consider whether Taylor's report should have been admitted
under 20 C.F.R. § 404.935(b). See, 20 C.F.R. § 404.935(b) ("If you have evidence

10

required under § 404.1512 *but you have missed the deadline described in paragraph (a) of this section*, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because . . . [s]ome other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.").   For this same reason, it is also irrelevant that the 5-day notice given by Plaintiff referred to Connell rather than Taylor.   Beyond that, both physicians are employed at Sands Constellation Heart Institute, both treated Plaintiff, and Plaintiff presumably had no control over which doctor completed the form.

The ALJ's errors in this regard placed Plaintiff in a no-win situation, since, on one hand, the ALJ indicated that Plaintiff's 5-day notice was essentially worthless since it referenced evidence that did not yet exist, but on the other hand, she indicated that she would not consider late evidence unless it had been mentioned in the 5-day notice.

The Court further notes that the ALJ did not follow the Commissioner's own Hearings, Appeal and Litigation Law Manual ("HALLEX"), which states in pertinent part:

> If the claimant informs SSA about evidence or submits evidence to SSA less than five business days before the date of the scheduled hearing, at, or after the hearing, but before the hearing decision is issued, the ALJ will accept the evidence if the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply. Generally, under 20 CFR 404.935(b) and 416.1435(b), an ALJ will find that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply when a claimant did not timely submit the evidence because:
> 
> \*\*\*
> 
> Some other unusual, unexpected, or unavoidable circumstances beyond the claimant's control prevented him or her from submitting the evidence earlier.
> Examples of unusual, unexpected, or unavoidable circumstances include but are not limited to:

\*\*\*

The claimant, or appointed representative, actively and diligently sought evidence from a source and the evidence was not received or was received less than five business days prior to the hearing.

> *NOTE: The ALJ will not develop <u>or require evidence that shows that the claimant or appointed representative has actively and diligently sought evidence.</u> However, when the claimant or representative shows that he or she made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the records at least five business days before the date of the scheduled hearing because of circumstances outside his or her control, <u>the ALJ will find that the claimant has actively and diligently sought evidence</u>.*

Hallex I-2-6-59(B)(1) (emphasis added). The Hallex goes on to state that, "if an ALJ does not find that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply, the ALJ will not exhibit the untimely evidence *and will explain his or her reason for not considering it*." Hallex I-2-6-59(C) (emphasis added). Here, however, the ALJ did not accept the late evidence even though Plaintiff's representative indicated that he had actively and diligently sought it, and she did not really explain her reason for not considering the evidence.[6] In this regard, the Court is aware that the Hallex may not have the force of law.[7]

---

[6] After offering the two reasons discussed earlier, which the Court has already found were untenable, the ALJ merely remarked, "Finally, none of the exceptions in the regulation is satisfied," without mentioning or evaluating Plaintiff's assertion that she had been actively and diligently seeking the evidence.

[7] *See, e.g., Noel C. v. Comm'r of Soc. Sec.*, No. 2:18-CV-127, 2019 WL 3297051, at \*9 (D. Vt. July 23, 2019) ("Although the Second Circuit has not reached the issue, some courts have questioned the precedential value of HALLEX policies. *See, e.g., Harper v. Comm'r of Soc. Sec.*, No. 08-CV-3803 (NGG), 2010 WL 5477758, at \*4 (E.D.N.Y. Dec. 30, 2010) ("[T]he HALLEX is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner[;] [a] failure to follow procedures outlined in HALLEX, therefore, does not constitute legal error."); *Punch v. Barnhart*, No. 01 Civ. 3355(GWG), 2002 WL 1033543, at \*18, n.3 (S.D.N.Y. May 21, 2002) ("[I]t is not clear that a violation of the procedures set forth in the HALLEX Manual is of any independent legal significance."); *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) ("HALLEX is a purely internal manual and as such has no legal force and is not binding."). Other courts have found that HALLEX policies have at least some advisory authority. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) ("While HALLEX does not carry the authority of law, this court has held that where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." (internal quotation marks

12

Nevertheless, the ALJ's failure to follow the Hallex's direction in this instance reinforces the

Court's conclusion that she abused her discretion by refusing to admit Dr. Taylor's opinion.

*See, Marcano v. Berryhill*, No. 17CIV4442KMKPED, 2018 WL 5619749, at *12 (S.D.N.Y.

July 13, 2018) ("Although failure to follow HALLEX procedures is not error per se, this

HALLEX directive reinforces my conclusion that the ALJ erred at step three.").

Having found that the ALJ erred in excluding Taylor's medical opinion, the Court will

remand this matter for a new hearing.   Because of that, the Court need not reach

Plaintiff's additional argument concerning alleged error by the Appeals Council involving

the same piece of evidence.

The ALJ's RFC Finding

Plaintiff also maintains that the RFC finding is unsupported by substantial evidence,

and, in that regard, focuses on the ALJ's decision to reject the medical opinion of treating

nurse practitioner Bradley Speta, ANP-C ("Speta"). Tr. 764.   Speta had indicated, in

pertinent part, that Plaintiff had "paroxysmal A fib with angina and decreased myocardial

function in the presence of morbid obesity with continued neurological and cardiological

work up," resulting in restrictions on lifting, standing and sitting, and that she would miss

more than four days of work per month. Tr. 764-75.   The ALJ found that Speta's opinion

was entitled to only little weight, remarking:

> This opinion is inconsistent with the objective evidence provided.   For
> example, stress test revealed large partially reversible anterior lateral wall
> defect suspicious for ischemia and EKG tracings with slight nonspecific ST
> abnormalities in the inferior leads slightly accentuated during initial
> vasodilator stress protocoland no significant Lexiscan induced dysrhythmias.
> The severity of the limitations alleged by Mr. Speta are inconsistent with the

omitted)).").

13

overall record.

Tr. 18.

Regarding these statements by the ALJ, Plaintiff argues that the ALJ was not

qualified to interpret the raw medical data without assistance from an expert.   More

specifically, Plaintiff states:

> Here, the ALJ interpreted raw medical data as being inconsistent with ANP
> Septa's opinion of limitations. Specifically, the ALJ found the severity of
> limitations alleged by ANP Septa to be inconsistent with a "stress test
> revealed largely partially reversible anterior lateral wall defect suspicious for
> ischemia and EKG tracings with slight nonspecific ST abnormalities in the
> inferior leads slightly accentuated during initial vasodilator stress protocol
> and no significant Lexiscan induced dysrhythmias." T 18 (citing T 767, 770).
> However, it is unclear how the raw cardiac findings confirming Plaintiff's
> impairments are not consistent with the limitations, and the ALJ failed to
> explain the significance of the findings.   The record does not contain a
> medical expert's interpretation of the raw medical data consistent with the
> ALJ's lay interpretation.

Pl. Memo of Law at p. 22.

The Court tends to agree with Plaintiff in this instance, since it is unclear how the

ALJ would be qualified to dispute Speta's medical opinion based on her own interpretation

of cardiac testing results, as opposed to having some interpreting medical opinion.   In this

regard, in support of her assertion that Speta's opinion was "inconsistent with the objective

evidence provided," the ALJ merely listed a number of test findings. *See, e.g., McHenry v.*

*Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("[T]he ALJ impermissibly assessed the MRI

report on his own without the assistance of a medical expert. We have said repeatedly that

an ALJ may not 'play doctor' and interpret 'new and potentially decisive medical evidence'

without medical scrutiny.   An ALJ may not conclude, without medical input, that a

14

claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her

impairments.") (citations and internal quotation marks omitted).

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 7) for judgment on the

pleadings is granted, Defendant's cross-motion (ECF No. 12) for the same relief is denied,

and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §

405(g) for further administrative proceedings consistent with this Decision and Order.

So Ordered.

Dated: Rochester, New York
          March 19, 2021

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge